IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CINTHIA ANN FROBISH**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1586-L |
| | § | |
| **CITY OF IRVING, TEXAS, et al.**, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants Kelley, Gibbins and Simpson's Motion for Summary Judgment and Defendant City of Irving's Motion for Summary Judgment, each filed June 6, 2008. After careful consideration of the motions, briefs, appendices, competent summary judgment evidence, record, and applicable law, the court **grants** Defendants Kelley, Gibbins and Simpson's Motion for Summary Judgment and **grants** Defendant City of Irving's Motion for Summary Judgment.

### I.   Factual and Procedural Background

On August 10, 2005, Cinthia Ann Frobish ("Frobish" or "Plaintiff") filed this lawsuit making various claims against the City of Irving Police Department and several of its officers. She amended her complaint twice, and the live pleading is her Second Amended Complaint, filed January 3, 2007. In her Second Amended Complaint, the defendants are the City of Irving (the "City"), Lino Luis Garcia ("Garcia"), Philip Kelley ("Kelley"), Bryan Gibbons ("Gibbons"), and Veronica Simpson ("Simpson") (collectively, "Defendants").

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 ("section 1983") and contends that Defendants deprived her of certain constitutional rights. Her claims against the individual officers

are denial of medial care and denial of her right to be free from unreasonable search and seizure (alleged sexual assault). With respect to the City, she contends that she was injured as a result of an unlawful policy or custom of the City that allowed inappropriate sexual contact with female pretrial detainees and an unlawful policy of providing inadequate medical care that resulted from the City's deliberate indifference to the serious medical needs of pretrial detainees in its jail. To ensure that nothing of substance is omitted from Plaintiff's claims against Defendants, the court sets forth the allegations contained in her Second Amended Complaint:

> 10. On or about August 10, 2003, plaintiff was arrested by a CITY OF IRVING police officer and charged with the offense of criminal mischief. Plaintiff was placed in the CITY OF IRVING jail facility located at 305 N. O'Connor, Irving, Texas.
>
> 11. At the time of plaintiff' book-in to the Irving City jail, she disclosed to defendant CITY OF IRVING, acting by and through its employees, agents, servants, and representatives, an extensive history of mental illness and that she was currently under treatment for bi-polar disorder for which she was prescribed various medications.
>
> 12. The contents of plaintiff's purse during the book-in process at the City of Irving jail revealed plaintiff had prescriptions for Prozac, an anti-depressant; trazedon, [an] anti-depressant; Celexa, an anti-psychotic; lithium, a mood stabilizer; Elavil, an anti-depressant used principally at night; valproic acid, an anti-convulsant; and Hadol, an anti-psychotic.
>
> 13. Plaintiff informed defendant CITY OF IRVING, acting by and through its agents, servants, employees, and representatives, that she would require jail personnel to dispense to her medications while she was detained.
>
> 14. Plaintiff was placed in a single cell and served lunch by defendant GARCIA. This defendant then commanded plaintiff to remove her clothes and get under the blanket on her bunk, which plaintiff did. Defendant left and returned approximately fifteen minutes later wearing latex gloves. Defendant GARCIA spread plaintiff's legs apart and inserted his fingers into plaintiff's vagina.

Defendant GARCIA told plaintiff that his shift was ending, but he would return the following day to "finish the job."

15. Plaintiff waited a sufficient period of time to allow Defendant GARCIA to leave and then began to beat on the door of her cell and crying out that she needed to make a telephone call. When she received no response from jail personnel, plaintiff pushed the "panic button" in the cell. Plaintiff who was visibly crying asked to be taken to a doctor or nurse, but she was refused. She then asked to make a telephone call. Plaintiff was allowed out of her cell to make the telephone call she requested. Plaintiff was then returned to a different single cell, but before she was locked in she asked to see a doctor or nurse but was refused.

16. Plaintiff again pushed the panic button and beat on the door to attract attention, but the response was the sudden entry of four male detention officers who quickly and forcibly grabbed plaintiff, placed her in a chair, and bound her to the chair with restraints.

17. Plaintiff complained to the detention officers that the restraint on her right ankle was too tight and causing her extreme pain because it was compressing on a steel plate in her ankle which had surgically been placed there to repair a fracture. Defendants GIBBONS and KELLEY began to laugh and wheedle detention officer Edwards for not making the left ankle restraint as tight as that on plaintiff's right ankle. Plaintiff begged to be seen by a doctor or nurse, but the response from Defendants KELLEY, GIBBONS, and SIMPSON, who had subsequently entered the cell, was to begin signing "Have you had a good day" to the tune of a popular song. One or more of the detention officers then rolled plaintiff's chair into yet another cell and left her there alone for approximately one hour. Plaintiff repeatedly cried out to be taken to a doctor or nurse because of the pain in her ankle and her agitated mental state, but she received no response.

18. After approximately one hour, detention officer McCombie opened the cell door and threw an unopened TV dinner on the table in the cell while plaintiff was still in restraints. It was not until a fellow detention officer reproached McCombie that he removed the arm restraints to permit plaintiff to eat. After eating, plaintiff again requested to be permitted to make a telephone call or see a doctor or nurse.

> 19. Detention officer McCombie declined her requested to be seen by medical personnel, but he did take plaintiff to the telephone and permitted her to make one telephone call. Plaintiff contacted Officer Ed Patterson of the Irving Police Department and began to explain to him the events of the last day when officer McCombie ripped the telephone receiver out of plaintiff's hands and hung up the telephone. He then returned plaintiff to her cell.
>
> 20. The following day plaintiff was taken to the office of a Lt. Thorpe where she met with Lt. Thorpe, a Lt. Ray, and a Sgt. Keeley of the Irving Police Department. Plaintiff was questioned by the three police officers about her encounter with Defendant GARCIA. Plaintiff told the officers what had happened to her. Plaintiff asked for a rape examination, but Sgt. Keeley refused saying it would not do any good. After further questioning, plaintiff was returned to her cell.
>
> 21. Later that same day plaintiff was transferred to the Dallas County Jail.

Pl.'s 2nd Am. Compl. ¶¶ 10-21 (footnote omitted).

Defendants Kelley, Gibbons, Simpson, and the City ("City Defendants") filed motions for summary judgment on June 6, 2008. Kelley, Gibbons, and Simpson contend that: (1) Plaintiff's claim for denial of medical care is barred because she failed to exhaust administrative remedies, (2) Plaintiff fails to establish any constitutional violations, and (3) qualified immunity protects them from suit and liability for civil damages. With respect to Plaintiff's claim for denial of medical care, the City contends that: (1) the claim is barred because Plaintiff failed to exhaust administrative remedies and (2) Plaintiff fails to establish any constitutional violations. With respect to Plaintiff's denial of medical care claim and her claim for violation of her right against unreasonable search and seizure, the City contends that: (1) Plaintiff is unable to establish that any City policy or custom, adopted or promulgated by its policymakers, was the "driving force" behind her alleged injuries and (2) Plaintiff is unable to establish that any of the City's training policies or procedures were

inadequate, that the City's policymakers were deliberately indifferent in adopting a training policy, or that any training policy directly caused any of her alleged injuries. Frobish did not file a response to either summary judgment motion.

## II.     Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Plaintiff filed no response to the summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F.Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Therefore, Plaintiff is relegated to her live pleading, Plaintiff's Second Amended Complaint, which is unsworn and does not constitute competent summary judgment evidence.

## III. Analysis

### A. Exhaustion of Administrative Remedies

City Defendants contend that the court should dismiss Plaintiff's claim for denial of medical care because she failed to exhaust the administrative remedies with respect to that claim. They submit evidence that the City's jail had a grievance procedure, and Plaintiff admits that she did not follow this procedure. A pretrial detainee must exhaust administrative remedies prior to bringing a section 1983 action. 42 U.S.C. § 1997e(a), (h); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Because there is no genuine issue of material fact as to whether Plaintiff exhausted administrative remedies with respect to her claim for denial of medical, City Defendants are entitled to judgment as a matter of law on this claim. Even if Plaintiff had exhausted the administrative remedies with respect to her denial of medical care claim, as set forth below, her claim nevertheless fails.

### B. Denial of Medical Care

Plaintiff contends that she was denied medical care while she was incarcerated at the City's jail. City Defendants contend that Plaintiff fails to establish any constitutional violations to support her section 1983 claim for denial of medical care because she received proper care for her injuries. The City also contends that Plaintiff is unable to establish that any City policy or custom, adopted or promulgated by its policymakers, was the "driving force" behind her alleged injuries and that Plaintiff is unable to establish that any of the its training policies or procedures were inadequate, that its policymakers were deliberately indifferent in adopting a training policy, or that any training policy directly caused any of her alleged injuries. For the reasons that follow, Plaintiff's claim for denial of medical care fails as a matter of law.

Under the Fourteenth Amendment, an official's act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights. *See Hare v. City of Corinth*, 135 F.3d 320, 324-26 (5th Cir. 1996) (citing *Hare*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)). "Subjective deliberate indifference" is "subjective knowledge of a substantial risk of serious harm to a pretrial detainee" followed by a response of "deliberate indifference to that risk." *Id*. at 324; *see also Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996).

City Defendants have submitted evidence that the officers did not have knowledge of a substantial risk of serious harm to Plaintiff to which they were deliberately indifferent. Because Plaintiff failed to respond to City Defendants' motions for summary judgment, City Defendants' evidence is undisputed. In other words, the record is devoid of any competent summary judgment evidence that Plaintiff was denied medical care or that City Defendants were deliberately indifferent to her medical needs. Accordingly, there is no genuine issue of material fact as to Plaintiff's claim for denial of medical care, and City Defendants are entitled to judgment as a matter of law on this claim. Because this issue disposes of the denial of medical care claim on the merits, any allegations as to an unlawful policy or custom becomes irrelevant and cannot serve as a basis for liability against the City. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986).

### C.   Sexual Assault

Plaintiff alleges that Garcia sexual assaulted her. Because Garcia has not been served, the court has no personal jurisdiction over him. This claim is made only against Garcia, so the court does not address it as it relates to Kelley, Gibbons, or Simpson. Insofar as this claim alleges an

unlawful policy or custom of the City that permits or condones sexual assaults of female inmates or pretrial detainees, the court will address it below.

        **D.    Unlawful Policy of Custom**

The City contends that Plaintiff was not injured as a result of any unlawful policy or custom of the City. For the reasons that follow, the court agrees.

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id. See also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as :

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*) (per curiam), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must

establish that the governmental entity through its deliberate conduct was the "moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County v. Brown,* 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett*, 728 F.2d at 769. The official complained of must possess

> [f]inal authority to establish [city] policy with respect to the action ordered. . . .The official must also be responsible for establishing final government policy respecting such activity before the [city] can be held liable. . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-482 (1986). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee agency or board and *cannot* review the action or decision of the employee, agency or board. *See City of St. Louis v. Praprotnik*, 485 U.S. 112,127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

The City acknowledges that it had no official policy prohibiting inappropriate sexual contact between inmates and officers because such contact is clearly contrary to state law and City practice. The City produces evidence that its practice does not condone or permit such illegal conduct. In this case, the City responded immediately by investigating Plaintiff's sexual assault allegations and referring the matter to the Dallas County District Attorney for prosecution. The City has presented uncontroverted evidence regarding its practice. Therefore, Plaintiff has not created a genuine issue of material fact as to any unlawful policy or custom that deprived her of her right to be free from unreasonable search and seizure, or deprived her of her right to bodily integrity, and the City is entitled to judgment as a matter of law on this claim.

### IV.     Conclusion

For the reasons herein stated, no genuine issues of material fact exist with respect to Frobish's claims for denial of medial care; denial of her right to be free from unreasonable search and seizure (alleged sexual assault), or deprived her of her right to bodily integrity; or any constitutional violations resulting from any allegedly unlawful City policy or custom. Accordingly, the court **grants** Defendants Kelley, Gibbins and Simpson's Motion for Summary Judgment and **grants** Defendant City of Irving's Motion for Summary Judgment. Because Garcia has not been served, the court lacks personal jurisdiction over him. Accordingly, Plaintiff's claims against him are **dismissed without prejudice**.[*] Judgment will issue by separate document as required by Fed. R. Civ. P. 58.

**It is so ordered** this 31st day of July, 2008.

Sam A. Lindsay
United States District Judge

---

[*]This case will be three years old on August 10, 2008, and Garcia has not been served. When Plaintiff filed her Second Amended Complaint on January 3, 2007, she acknowledged that she was "unable to locate the whereabouts of [Garcia]." Pl.'s 2nd Am. Compl. ¶ 3. The 120-day deadline set forth in Rule 4(m) of the Federal Rules of Civil Procedure to effect service has long expired. The record does not reflect any efforts made by Plaintiff to serve Garcia or any requests for an extension of time to permit such service. In light of these circumstances, the court determines that Plaintiff has either abandoned all efforts to serve Garcia or is unable to do so. The court does not believe that Rule 4(m) requires it to reward litigants who lack diligence in prosecuting their claims. In the event that Plaintiff serves Garcia within thirty days from the date of this order, the court will reopen this case as to Garcia only.

**Memorandum Opinion and Order– Page 11**